UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

**HAROLD JAY LEFKOWITZ**, individually and as Representative of a Class of similarly situated individuals, and on behalf of the LIU Retirement Account, the NYU Retirement Plan, the Continuum Health Partners, Inc. Plan, the Cabrini Medical Center Plan, the Saint Barnabas Medical Center TDA Plan, the Mobilization for Youth Plan, the Yeshiva University plan and similar Plans managed by TIAA,

                        Plaintiffs,

v.

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION (TIAA)**,

                        Defendant.

-------------------------------------------------------------------------x

**COMPLAINT**
JURY TRIAL DEMANDED
ON ALL COUNTS AND
ISSUES SO TRIABLE

**Docket No**.

## PRELIMINARY STATEMENT

1. Plaintiff Harold Jay Lefkowitz, is a retired certified public accountant who is a participant and beneficiary of a number of retirement plans administered by Defendant. Seeking to proceed on behalf of a Class of similarly situated participants and beneficiaries of TIAA retirement plans, he brings this action pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), to recover financial losses suffered by the plans and to obtain remedial, injunctive and other equitable relief from Defendant based upon breaches of its fiduciary duty.

2. As set forth in detail below, Defendant TIAA has breached its fiduciary duties by engaging in expensive duplicative mailings to beneficiaries in retirement plans it administers, unnecessarily mailing individual monthly statements to beneficiaries in separate mailings, resulting in expenses paid by the plans that are unnecessary, unreasonable and excessive, and not disclosed to plan participants. Plaintiff, for example, receives 15 separate mailings of account

each month.  The Defendant has been aware of the problem for years, yet has failed to take any remedial steps, despite repeated promises to correct the problem, and continues to waste literally millions of dollars on unnecessary mailings.

## PARTIES

3.   Plaintiff Harold Jay Lefkowitz lives in Nassau County, New York, New York.  He is a participant and beneficiary, within the meaning of ERISA §3(7) and (8), 29 U.S.C. § 1002(7) and (8) in retirement plans administered by Defendant.

4.   Defendant Teachers Insurance and Annuity Association (TIAA), is headquartered at 730 Third Avenue, New York, NY.   It provides a variety of services, particularly retirement-related services, to individuals who work in the academic, research, medical and cultural fields, serving several million active and retired employees, with billions of dollars under its management. Until very recently, the Defendant was known as "TIAA-CREF."

5.   The services provided by TIAA include the management of employer-sponsored § 403(b) tax-sheltered retirement plans for employees of § 501(c)(3) educational, religious, and charitable organization, as well as §401(k) and 457 plans, Keogh plans, and Supplemental Retirement Plans.

6.   TIAA is a fiduciary, within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A), to the plans in which Plaintiff is a participant (and to many other similar plans) in that it exercises discretionary control over management of the plan's assets and the management of the plan.

7.   As a fiduciary, TIAA has an obligation to administer the plans economically and in the best interests of the plan and its participants.

## JURISDICTION & VENUE

8. Plaintiff seeks relief individually, and on behalf of similarly situated plan participants, and on behalf of the plans administered by Defendant, pursuant to the private causes of action conferred by ERISA §409, 29 U.S.C. §1109 and ERISA § 502, 29 U.S.C. § 1132.  Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1),  29 U.S.C. §1132(e)(1).

9. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391(b)(1) and (2) because it is the district where the Defendant has its headquarters and where all the acts and omissions complained of herein occurred.

## CLASS ACTION ALLEGATIONS

10. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the plans administered by Defendant.  He seeks to represent the following Class:

> All persons who are or have been participants in and beneficiaries of retirement plans administered by Defendants who were affected by Defendant's conduct set forth in this complaint (to wit, Defendant's failure to change its mailing systems to avoid multiple separate mailings of account statements) as well as those who will become participants or beneficiaries of plans administered by Defendant in the future.

11. Certification of this Class is proper under Rule 23(a) in that:

   A. **Numerosity.** The members of the Class are so numerous that joinder of all members is practicable.  Although Plaintiff does not know the exact number of Class members as of the date of filing, Plaintiff was informed by Defendant that it administers the benefits paid to over three million retirees.  There are millions of additional participants in their plans who are not yet receiving benefits, but who have an interest

in having the plans administered in a cost-effective way.  Even if the Class is limited to beneficiaries and participants of the same plans as Plaintiff's, he is a participant and beneficiary of retirement plans of seven large New York institutions, each of which has hundreds of participants and beneficiaries in the TIAA-administered plans of those institutions.  A large number of these individuals participate in more than one plan; indeed, the original raison d'etre of TIAA was to permit individuals employed by educational and similar institutions to move employment easily among institutions.  The number of individuals in the Class easily numbers in the thousands.

B. **Commonality.**  Common issues of fact and law predominate over any issues unique to individual Class members.  Issues that are common to all Class members include, but are not limited to:

   i. Whether Defendant breached its fiduciary duty to participants and beneficiaries by not implementing steps to reduce plan mailing expenses by combining mailings regarding accounts to each beneficiary into a single "household mailing" to the beneficiary rather than in multiple separate mailings.

   ii. Whether the Defendant subjected the plans it administers to unreasonable fees and expenses that were not incurred solely for the benefit of Plan participants.

   iii. Whether the Defendant failed to establish, implement and follow procedures to properly and prudently determine whether fees and expenses paid by the plans it administers are reasonable and incurred solely for the benefit of Plan participants

       iv. Whether Defendant Failed properly to inform plan participants of the detailed fees and expenses that are or have been paid by the plan

       v. Whether Defendant is liable to the plans it administers and the Class for losses suffered as a result of the breaches of its fiduciary duties and other ERISA-imposed obligations.

C. **Typicality**. The claims brought by Plaintiff are typical of those of the absent Class members in that Defendants owed the exact same fiduciary and other ERISA-based obligations to each plan participant and to each member of the Class. To the extent that there are any differences in Class members' damages, such differences would not arise until after an award is made to the affected plans and would be resolved through simple mathematics; such minimal and formulaic differences are no impediment to Class certification.

D. **Adequacy of Representation.** The Plaintiff is an adequate representative of the Class and will protect absent Class members' interests in this litigation. The Plaintiff does not have any interests antagonistic to the other Class members does he have any unique claims or defenses that might undermine the efficient resolution of the Class claims. Plaintiff has retained competent counsel with experience in ERISA, Class actions, and complex litigation.

12. Class certification is also appropriate under Rule 23(b) and each subpart in that:

A. Pursuant to Rule 23(b)(1)(A), in the absence of certification, there is a risk of inconsistent adjudications with respect to individual Class members;

B. Pursuant to Rule 23(b)(2), the Defendants have acted on grounds generally applicable to the Class as a whole; and

C. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any purely individual issues and thus a Class action is superior to any other method for adjudicating the claims set forth herein.

## FACTS

13. Plaintiff worked for a number of academic and medical employers during the course of his career. Whenever available to him, he participated in a TIAA retirement plan at each institution. As a result, he has a number of TIAA accounts. He is a participant in the LIU Retirement Account, the NYU Retirement Plan, the Continuum Health Partners, Inc. Plan, the Cabrini Medical Center Plan, the Saint Barnabas Medical Center TDA Plan, the Mobilization for Youth Plan and the Yeshiva University plan.

14. Plaintiff's work history, featuring work for more than one institution, is common among TIAA participants. Indeed, one of the reasons for the establishment of TIAA was to facilitate movement of academics between institutions by having a retirement plan that is effectively portable.

15. Plaintiff is now retired and receives monthly payments from each of the TIAA plans in which he participates.

16. The payments were made initially by check; however, for some years now the payments have been directly deposited into Plaintiff's bank account by TIAA.

17. When Plaintiff began to receive his retirement statements, TIAA used what is called a "household mailing," meaning that statements and account mailings for multiple accounts belonging to the same person and the same address were combined, thus reducing mail volume and expenses. At some point approximately 8 years ago, however, Defendant ceased "household

mailing," and began to send individual statements in separate envelopes with separate postage to Plaintiff.

18.  Believing this was a waste of money, Plaintiff on August 11, 2008 wrote to a TIAA representative noting that he was receiving eight statements ranging from $14.40 to $1914.20, and suggesting "that you consolidate the eight (8) statements into one—just think of the postage you can save."

19. Plaintiff received no response to his August, 2008 suggestion.

20.  On January 23, 2009, Plaintiff wrote to Roger W. Ferguson, President and Chief Executive Officer of TIAA-CREF.  He explained that while he used to get one check a month, he now received eight.  He urged TIAA to take steps to correct this in order to save money and to better serve retirees.

21. On January 28, 2009 Plaintiff received a response from Heather Lange, Customer Resolution Manager at TIAA, confirming receipt of his letter.  She thanked him for bringing the matter to the attention of the organization, and stated he would receive a written response soon.  He did not.

22.  On August 11, 2009, Plaintiff wrote again to the Executive Communications Manager at TIAA, with a copy to Roger Ferguson, the CEO of TIAA stating he was now getting 15 envelopes each month with notice of deposits and payments.  He asked "Could you please ask Mr. Ferguson to let me know how this is economical and logical for TIAA not to consolidate its processing."

23.  Thereafter, Plaintiff received a letter dated August 13, 2009 from a Customer Resolution Manager at TIAA Cref stating "I will continue to work towards fully addressing the issues you have raised."  Plaintiff called the Customer Resolution Manager on August 19, 2009 and was

told she would call back with progress. She did not call, presumably because there was no progress.

24. On September 7, 2009, Plaintiff wrote the Trustees of TIAA CREF, stating that as a result of a change in their system, he now was receiving 15 checks electronically deposited to his bank, triggering 15 notices separately mailed each month, so that TIAA was paying $63 annually in postage in lieu of $4.20. He explained that he had spoken to TIAA staff to no avail, and requested that the statements be consolidated into one.

25. On October 6, 2009 Plaintiff sent a letter to his senators and congressmen, with a copy to Roger W. Ferguson, President and CEO of TIAA, complaining again that he was receiving 15 letters monthly indicating that checks were electronically deposited to his bank account, costing TIAA of $5.25 instead of 35 cents each month. Plaintiff wrote "I appeal to you to use your good offices to instruct and influence the Administrations and Trustees of TIAA-CREF that their job is to act professionally and responsibly to protect the assets of the company they work for."

26. On October 19, 2009 Plaintiff received a letter from Ronald Thompson of the TIAA Board of Trustees stating "I can appreciate your frustration with the number of statements you received. I am aware of the issues and the company is exploring the cost and feasibility of system changes to allow for consolidated statements…We are continuously looking for ways to improve participant satisfaction and to reduce inefficiency…" A copy of this letter was sent to CEO Roger Ferguson.

27. On October 26, 2009, in response to the above letter, Plaintiff again wrote to Ronald stating that he while he appreciated the claim that TIAA was "exploring the cost and feasibility" of a solution, "I cannot accept that your Computer Department cannot produce a solution which will save TIAA and me millions of dollars in postage alone and not upset your Long Range

Plans.  I AM WRIITING TO YOU TO SAVE MONEY, ELIMINATE WASTE,  NOT TO ELIMINATE MY FRUSTRATION IN RECEIVING MULTIPLE STATEMENTS.  Please live up to your Bio and solve this waste of Pensioner dollars."

28. On November 5, 2009, Plaintiff wrote to the AARP, with a copy of the letter to CEO Roger W. Ferguson, complaining of the cost of the multiple mailings, and asking if the organization could assist.  He sent the same letter to the Chair of the Pension Benefit Guarantee Corporation.

29.  On December 11, 2009, Plaintiff received a letter from Hayler Money, Manager of Public Affairs for TIAA, stating "I understand your frustration with the number of printed statements you currently receive and want to assure you that a systems change to enable consolidation is high on our priority list.  I recognize how important this matter is to you and I assure you management is aware of this issue."

30.  On May 30, 2010, Plaintiff sent another letter to Roger W. Ferguson, marked "personal and Confidential" "in the hope that this will reach you and not be buried in the corporate bureaucracy where my numerous previous requests have been buried."  The letter pointed out that receiving 15 confirmations a month cost $60.48, compared to $5.04, if the statements were consolidated, and assuming a minimum of 1 million pensioners similarly situated, this was costing TIAA at least 60 million dollars a year.

31. In the summer of 2010, Plaintiff received a copy of a letter dated June 30, 2010 from the Regional Director of the  United States Department of Labor addressed to Senator Gillibrand, who had forwarded Plaintiff's complain to the DOL  and requested a response.  The letter stated that the DOL had been in touch with TIAA, and had been advised that "a system to change to

facilitate consolidation is high on TIAA-CREF's priority list.  ...TIAA-CREF is aware of Mr. Lefkowitz's concerns and it appeals like it is being addressed."

32. On July 1, 2010, Plaintiff rece4ived a response from Zulaika Jumarelli, Executive Communications Manager in the Office of the President, stating that "the cost of pursuing a quick fix to this problem is prohibitive at this time.  Presently, we are in the midst of a multiyear transition to replace and upgrade our technology. . .The good news is that the completion of this plan will make it easier for us to implement the solution you recommend…We are sorry that a nearer term fix does not make financial sense at this time."

33. On March 28, 2011 Plaintiff again wrote to Senator Gillibrand about the problem, saying it was still not resolved.

34.  Throughout 2011, Plaintiff contacted his senator, the Department of Labor, and others about the problem.  In August, he received a letter from the Department of Labor, signed on behalf of the Director of Participant Assistance of the Employee Benefits Security Administration.  The letter included an email dated August 12, 2011 sent to the EBSA stating that Defendant was in the "midst of a multi-year transition to replace and upgrade our technology" that would allow the "household" mailed statements to be sent in one envelope, and indicating that six of the notices Mr. Lefkowitz had received in February were sent in one envelope.   On information and belief, this did not occur and to date Plaintiff continues to receive the same multiple mailings.

35. By letter dated May 18, 2012, TIAA again responded to repeated requests by Plaintiff with a letter including copies of two prior letters, stating that at this time TIAA was unable to combine the confirmation s of send via e-delivery, although were "working on" an enhancement to permit this.  The letter went on to say that "we understand your frustration.  I have shared your

case with our management team, so that it may be documented and reported to the appropriate area(s)."

36. On January 27, 2015 Plaintiff spoke to Paul Yakoboski, a senior economist at TIAA, about the expense of the multiple mailings, and followed up with a letter to him requesting again that he bring this to the attention of appropriate persons at TIAA.

37. On February 23, 2015 Plaintiff wrote to Ed Van Dolsen, President of Retirement & Individual Financial Services for TIAA, in response to a form letter describing certain cost savings initiatives being implemented for CREF.  The letter stated that Plaintiff was glad that someone was watching costs, and noted that he had been repeatedly writing TIAA about unnecessary postage costs to no avail.  There was no response to this letter.

38. On August 12, 2015 Plaintiff met with individuals from the TIAA Wealth Management team to discuss his concerns about the duplicative mailings.  Thereafter he received a letter dated August 24, 2015, stating that while over the last few years, TIAA has replaced some technology to allow "household" mailings, "the functionality is not applicable to Minimum Distribution Option (MDO) and Interest Only (IKO) contract payments as those are housed on an older platform.  At this time there is no definitive timeframe available when these contracts will be moved to a different platform to allow the payment confirms to the "householded" for mailing.

39. Plaintiff, like many retirees, is not comfortable with computers and emails, and continues to want to receive mailed confirmation that deposits are made to his bank.  But he wants one confirmation, not multiple ones.

40. The costs of the multiple mailings are huge because of the large number of individuals participating in TIAA plans and the fact that a large percentage of these individuals participate in more than one plans.

41. TIAA has no control over market fluctuations who affect the accounts of participants in the plans it administers, but it does have control over the fees and expenses, which should be reasonable, incurred solely for the benefit of participants, and fully disclosed.

42. TIAA has access to enormous computer programming technology that could be used to provide multiple notices economically in combined mailings.

43. TIAA has a fiduciary duty to administer the plans under its care economically, and it has failed to do so.

44. TIAA's fiduciary duties are continuing ones, and include taking steps to reduce waste and inefficiency that result in unnecessary costs to the plans it administers.

45. Even if a wasteful process is not brought to the attention of a fiduciary, the fiduciary nonetheless has an obligation to pay attention to its costs and expenses, and eliminate wasteful expenditures. Here, however, the problem was repeatedly brought to the attention of TIAA.

46. TIAA has repeatedly represented its intention to correct the problem of duplicate mailings, but on information and belief has taken no effective steps to do so.

47. On information and belief, the cost of developing and implementing system to send statements of account to TIAA recipients and beneficiaries with multiple accounts would be far less than the cost of the individual mailings TIAA insists on continuing.

## TIAA's LEGAL DUTY TO THE PLANS

48. ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1) mandates that:

> [T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying **reasonable expenses** of administering the plan.

(Emphasis added.)

49. ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A & B) require that a Plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and

    A.   For the exclusive purpose of:

        (i) providing benefits to participants and their beneficiaries; and

        (ii) **defraying reasonable expenses of administering the plan;**

    **B.   With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.**

(emphasis added)

## CLAIM FOR RELIEF

50. Plaintiff restates and incorporates the allegations contained in paragraphs 1 through 48 as though fully set forth here.

51. As set forth in detail above, Defendant has breached its fiduciary duties to the Plans it administers and to their beneficiaries and participants, in violation of 29 U.S.C. §1104(a). Accordingly it is liable to make good to the plans improperly administered any losses to the plans resulting from the breach, as well as appropriate equitable and remedial relief, including reimbursing losses to plan beneficiaries, and injunctive relief to prevent future losses to beneficiaries.

**WHEREFORE** Plaintiff on behalf of the similarly situated Plan participants and beneficiaries in plans administered by Defendant respectfully request that the Court:

    1. Find and declare that the Defendant has breached its fiduciary duties as described above;

2. Order the Defendant to make good to the plans it administers all losses that the plans incurred as a result of the conduct described above and to restore the plans to the positions they would have been in but for the breaches of fiduciary duty;

3. Direct Defendant from future breaches of ERISA by ordering it to develop cost-effective systems for notifying beneficiaries of deposits to their accounts;

4. Award actual damages to the plans in the amounts of their monetary losses resulting from the breach of duty;

5. Require Defendant to render an accounting of all sums spent in mailing materials to Plaintiffs and others similarly situated;

6. Order appropriate remedial relief to Plaintiff and the class to reimburse any financial loss as a result of the breach of fiduciary duty;

7. Order costs and attorney fees pursuant to ERISA § 502(g) and the common fund doctrine

8. Order the payment of interest to the extent it is allowed by law; and grant other and further relief the Court deems appropriate.

Dated: March 15 , 2016

_____
TOBY GOLICK
Attorney for Plaintiff
55 Fifth Avenue,. 11th floor
New York, New York 10003
212-790-0244 (telephone)
212-790-0256 (fax)
tgolick@yu.edu